IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HSL FILLY SHIPPING LIMITED; and, | § | |
| FLEET MANAGEMENT LIMITED | § | |
| | § | C.A. No. 4:22-CV-00066 |
| v. | § | Admiralty - FED. R. CIV. P. 9(h) |
| | § | |
| VOPAK TERMINAL—DEER PARK, INC. | § | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
VOPAK'S DEAD BERTH CLAIM**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs, HSF Filly Shipping Limited and Fleet Management Limited, file this Motion for Partial Summary Judgment and request that this Court dismiss Defendant, Vopak's, dead berth claim against Plaintiffs. In support of this motion, Plaintiffs would respectfully show that:

- Vopak did not bring its alleged dead berth claim until more than two years after the incident. Defendant did not and still has not submitted any evidence that it sustained actual damage by the delayed departure.

- Vopak has failed to provide any evidence whatsoever that the berth would have been used by other vessels during the time that the *M/T Fairchem Filly* occupied it or that it was exposed to demurrage charges.

- The delay and lack of evidence of any actual damage demonstrates that Vopak's dead berth charge is a penalty, not a liquidated damage. Therefore, it is unenforceable as a matter of law.

## NATURE AND STAGE OF PROCEEDING

1.     Plaintiffs filed their Original Petition against Defendant on January 7, 2022. On February 3, 2023, the parties filed their Joint Motion for Extension of the Case Management Deadlines. (Doc. No. 16) This Court has yet to rule on that motion. Under the current Scheduling

Order, the dispositive motion deadline is May 15, 2023. Thus, this Motion for Summary Judgment, pursuant to the Federal Rules of Civil Procedure, is timely filed.

## STATEMENT OF THE ISSUES

2.      Whether Defendant's dead berth claim against Plaintiffs should be dismissed where Defendant failed to invoice Plaintiffs for over two years (and still has not provided an invoice) and, has failed to provide any evidence of actual damages, thereby making the $5,000 per hour tariff an unenforceable penalty.

3.      The Court's standard of review is set forth in Section II *infra.*

## I.      FACTUAL BACKGROUND

4.      On or about May 30, 2019, the *M/T Fairchem Filly* called at Vopak Terminal – Deer Park, Dock No. 5, in the Port of Houston to discharge – among other cargo – a parcel of hexene. Because oxygen negatively affects the purity of hexene, it is transferred under a "blanket" or "pad" of inert gas; in this case, nitrogen.

5.      Prior to discharge, a Ship/Shore Safety Checklist was completed by vessel and terminal personnel. In multiple sections on the checklist, Vopak indicated that it would apply nitrogen to the vessel at a "blanket" or "blanketing" pressure during the ship's discharge operation. (Ex. A)

6. Also prior to discharge, vessel and terminal personnel completed a Declaration of Inspection. There again, it was noted that nitrogen would be supplied by the terminal at blanket pressure. Contrary to Vopak's policies and procedures, Vopak failed to provide the *M/T Fairchem Filly* with its Nitrogen Supply Acknowledgement Form, which would have informed the vessel of the terminal's pressure for delivering nitrogen for purge and blanketing operations.

7.      At about 0738 on May 30, 2019, the low inert gas pressure alarms for the vessel's

3P and 3S cargo tanks sounded, which indicated that the nitrogen blanket was being depleted. Over the next several minutes, the *M/T Fairchem Filly's* Chief Officer made numerous unsuccessful attempts to reach Vopak's Person-in-Charge ("PIC") regarding the shore-supplied nitrogen. Ultimately, Vopak provided nitrogen to the vessel at a much higher purging pressure level as opposed to the agreed upon blanketing pressure. As a result, *M/T Fairchem Filly's* 3P and 3S cargo tanks become over-pressurized. There was a rupture of the 3P tank, a release of hexene into the adjacent ballast tank, and the release of ballast water onto the vessel's deck. Both the Vessel and Vopak closed their respective valves and cargo operations ceased.

8.      The over-pressurization event resulted in physical damage to the *M/T Fairchem Filly* requiring necessary repairs, cargo loss and/or damage, delay, loss of use, demurrage, and other economic loss and expenses. Additionally, the Vessel was forced to remain docked at the terminal for longer than anticipated.

9.      On August 25, 2021, over **26 months** after the incident, the parties engaged in mediation to attempt to settle this matter and avoid litigation. After a full day of negotiations, Vopak, for the first time, verbally presented Plaintiffs with a dead berth claim of $468,833.33 for alleged business interruption due to the *Fairchem's* delay in departing the berth caused by the cargo tank rupture. This claim was not even documented until **after** the mediation, which consisted of a one-page accounting of the Vessel's time at the berth. (See Ex. B). Importantly, there was no invoice of any actual damage sustained by Vopak submitted along with the report.  Ultimately, Vopak delayed in bringing this claim for more than two years after the incident, a fact confirmed by its discovery responses. (See Ex. C, Answer to Interrogatory No. 15). This delay is indicative that the claim is not a liquidated damage, but rather an unenforceable penalty. Simply put, Vopak's claim is punitive and retaliatory against Vessel interests for making their claim for damages.

10.     In support for its nearly half a million-dollar claim, Vopak cites to a berth agreement which provides for a $5,000.00 "tariff" for every hour that the vessel exceeds its allotted time at the berth. (Ex. D). Defendant mischaracterizes the dead berth provision in the agreement as a liquidated damages provision (Ex. C, Answer to Interrogatory No. 16), a description that contradicts Vopak's own cross- claim in which it identifies the charge as a "penalty." *See* Doc. 9, ¶ 18. Of particular importance, and as can be seen from the face of the berthing agreement, no Vessel personnel signed the agreement.

11.     In addition to the delay and mischaracterization, Vopak's responses to Plaintiffs' Interrogatories and Requests for Production fail to provide any evidence that the provision in the berthing agreement is not an unenforceable penalty. Specifically, Defendant's responses fail to show that Vopak actually incurred to any demurrage charges, or that there were other vessels waiting to be discharged at the occupied berth, thus causing an interruption to Vopak's business. For instance, with respect to Interrogatory No. 17, which seeks details of Vopak's supposed business interruption due to the alleged delay in departure, Vopak improperly objected, stating that it did not have to prove actual terminal delay in order to succeed in its dead berth claim. (Ex. C, Answer to Interrogatory No 17.). Additionally, in response to Plaintiffs' request for invoices, claims, statement of accounts, or other billing documents related to Defendant's "dead berth" penalty, Vopak merely provided a boilerplate "Note of Protest" regarding the vessel's delay in departure. (Ex. E, Answers to RFP Nos. 14 and 15; Ex. F, Note of Protest). Ultimately, Vopak did not and has not provided any invoice or evidence that it suffered any damage due to the Vessel occupying the berth.

12.     As discussed below, Defendant's dead berth claim is not a liquidated damage but rather an unenforceable penalty. The delay in bringing this claim, along with the complete absence

of evidence showcasing any alleged business interruption, or exposure to demurrage charges is not only indicative of this fact, but also prevents recovery all together.

## II.    <u>SUMMARY JUDMENT STANDARD</u>

13.    Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986). Accordingly, a court must be satisfied that no reasonable trier of fact could find for the nonmoving party. In other words, "if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. Of Dental Examiners*, 204 F. 3d 629, 633 (5th Cir. 2000).

14.    Initially, the moving party bears the burden of establishing that there are no genuine issues of material fact. If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, as is the case herein, the moving party may satisfy its burden merely by pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.* at 324. The nonmoving party's burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), by "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73 (1990), or by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994).

## III.    <u>ARGUMENT AND AUTHORITIES</u>

15.    Whether a liquidated damage provision constitutes a penalty is a question of law.

*Louis Dreyfus Corp. v. 27,946 Long Tons of Corn*, 830 F.2d 1321, 1331 (5th Cir. 1989) (citing

*Board of Trustees v. Wood,* 779 F.2d 1106, 1107 (5th Cir. 1986)). In cases of general maritime

law, the Fifth Circuit applies a two-part test to answer this question. *Id.*

> The first factor in determining if a liquidated damage provision constitutes a penalty
> is the anticipated or actual loss caused by the breach. Accordingly, the amount fixed
> is reasonable if it approximated **the actual loss that has resulted from a
> particular breach**, even though it may not approximate the loss that might have
> been anticipated under other possible situations. The fixed amount is also
> reasonable if the breach approximated the loss anticipated at the time of the making
> of the contract, even though it does not approximate the actual loss.
> …
> The second factor is the difficulty of proof of loss. The greater the difficulty of
> proof of loss, the more flexibility is allowed in approximated the anticipated or
> actual harm. *Id.* (quoting *Farmers Expert Co. v. M/V GEORGIS PROIS*, 799 F.2d
> 159, 162 (5th Cir. 1986). (emphasis added).

16.     With respect to the first factor, where the evidence establishes that the liquidated

damages amount is excessive when compared to the reasonable estimate of damages, the contract

fails to approximate the loss anticipated for such periods and is therefore a penalty. *Id.* at 1332. In

determining if the estimate is reasonable, courts look to the relationship between the estimated and

actual damages. *Farmers Expert Co. v. M/V GEORGIS PROIS*, 799 F.2d 159, 162 (5th Cir. 1986).

In *Farmers*, evidence was presented indicating that the terminal incurred actual damages of

$5,184.00 per hour. *Id.* Given this evidence showcasing the relationship and proximity between

the actual damages and the $5,000.00 per hour tariff, the Court held that the charge was reasonable

and considered liquidated damage. *Id.* at 164-65. However, unlike the terminal in *Farmers*,

Defendant has not provided any invoice or documentation indicating that it has sustained actual

damages or quantified its damages. Accordingly, without evidence of actual damages, it is

impossible to determine if the $5,000.00 per hour tariff is not only reasonable but enforceable.

17.     Moreover, Courts have held that where there were no vessels waiting to be

discharged at the occupied berth, and the terminal was not exposed to any demurrage charges, a

liquidated damages clause is unreasonable and none of the charges should be recoverable. *St. James Stevedoring Partners, LLC v. Motion Navigation Ltd.*, No. 13-541, 2014 WL 3892178 *17 (E.D. La. Aug. 6, 2014).   In *St. James Stevedoring Partners, LLC,* the court assessed the reasonableness and enforceability of a $5,000 .00per hour tariff for a vessel failing to vacate a berth when ordered. Like the case at bar, the tariff was characterized as a liquidated damage, and was considered the estimate of damages potentially sustained by the terminal in delaying to discharge other vessels, and potential exposure to demurrage charges due to the berth being occupied. *St. James Stevedoring Partners, LLC,* No. 13-541, 2014 WL 3892178 at *17 (E.D. La. Aug. 6, 2014). In determining the tariff's enforceability, the Court considered whether other vessels were waiting for the occupied berth, thus causing a true business interruption, and exposure to demurrage charges. *Id.* Because the terminal could not provide any evidence that other vessels were waiting for the occupied berth, or that the terminal was exposed to demurrage charges, the Court held that the hourly tariff was "unjustified and an unreasonable penalty" which could not be recovered. *Id.* at 18.

18.     Similar to the terminal in *St. James,* Vopak has provided no evidence as to any actual loss or business interruption, despite numerous discovery requests seeking such information. Without such evidence, including actual evidence that vessels were waiting for the occupied berth, or that Defendant was exposed to demurrage charges, it is impossible to determine if the liquidated amount "approximates" the actual loss allegedly incurred by Defendant and is therefore reasonable. To succeed in its argument that the tariff is liquidated damage and not a penalty, Vopak must provide some evidence to show that the berth would have been used by other vessels while it was occupied by the *Fairchem*. Vopak has failed to provide such proof. Accordingly, the tariff should be considered an unenforceable penalty that Defendant is precluded from recovering.

## IV.   <u>CONCLUSION</u>

19.     Vopak's claim for dead berth fees has all the earmarks of an unenforceable penalty. First, Vopak has never invoiced Plaintiffs, nor even mentioned the damages sought until more than two years **after** the incident. Second, Vopak's claim is untethered to any fact or evidence that it was actually damaged as a result of *Fairchem Filly's* occupation of the berth. Vopak itself admits that the charge is a penalty. For these reasons, Plaintiffs respectfully request that this motion be granted and that Vopak's dead berth claim be dismissed with prejudice.

Respectfully submitted,

*/s/ James T. Bailey*

Robert L. Klawetter
Federal I.D. No. 2471
State Bar No. 11554700
rklawetter@sbsb-eastham.com
James T. Bailey
Federal I.D. No. 30347
State Bar No. 24031711
jbailey@sbsb-eastham.com
Dylan S. Hoke
Federal I.D. No. 38220027
State Bar No. 24126961
dhoke@sbsb-eastham.com
1001 McKinney Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-0905
Facsimile: (713) 574-2942

*Attorneys for Plaintiffs,*
*HSL Filly Shipping Limited and*
*Fleet Management Limited*

OF COUNSEL:

SCHOUEST, BAMDAS, SOSHEA, BENMAIER & EASTHAM PLLC

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing pleading on **May 15, 2023**, electronically, and that a true and correct copy of the foregoing will be served on counsel of record via the Electronic Case Filing System of the United States District Court for the Southern District of Texas, Houston Division.

***Via Electronic Mail***

Thomas R. Nork
Alejandro Mendez-Roman
Holman, Fenwick, Willan USA LLP
5151 San Felipe, Suite 400
Houston, Texas 77056

/s/ *James T. Bailey*
James T. Bailey