IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HSL FILLY SHIPPING LIMITED; and, FLEET MANAGEMENT LIMITED § § § *Plaintiffs*, § § v. § § VOPAK TERMINAL—DEER PARK, INC. § § *Defendant*. § | C.A. No. 4:22-CV-00066 Admiralty - FED. R. CIV. P. 9(h) |

### DEFENDANT VOPAK TERMINAL – DEER PARK, INC.'S
### MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now Vopak Terminal – Deer Park, Inc. ("Vopak") and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this Motion for Summary Judgment and respectfully shows the following:

**I.**
**Introduction**

Plaintiffs' sole claim against Vopak is that Vopak breached its wharfinger's duty to warn of a hidden hazard. Competent summary judgment evidence proves otherwise, and there is no controverting evidence.

**II.**
**Procedural Status**

Plaintiffs filed their Complaint (Doc. No. 1) on January 7, 2022, which Vopak timely answered on January 26, 2022 (Doc. No. 9). On May 15, 2023, Plaintiffs filed their Motion for Partial Summary Judgment seeking dismissal of Vopak's claim for dead berth charges. (Doc. No. 18). On June 5, 2023, Vopak responded (Doc. No. 19), to which Plaintiff's replied on June 12,

1

2023 (Doc. No. 20). On June 16, 2023, Judge Kenneth Hoyt ordered the case transferred to Magistrate Judge Dena Palermo (Doc. No. 22), pursuant to the parties Consent to Proceed Before United States Magistrate Judge Dena Palermo (Doc. No. 21). On July 11, 2023, Magistrate Judge Palermo held a Status Conference and, thereafter, ordered that "once the Court rules on pending and forthcoming motions for summary judgment, they (the parties) will reconvene settlement negotiations." (Doc. No. 25). Magistrate Judge Palermo further held that "[D]ispositive motions shall be filed on or before August 15, 2023." (Doc. No. 25). Therefore, Vopak's Motion for Summary Judgment is timely filed.

## III.
## Factual Background

Vopak is the owner/operator of a marine terminal located in the Houston Ship Channel in Deer Park, Texas. Chemical tankers regularly call at the terminal to offload bulk, liquid chemical cargo. Plaintiffs are the owner and operator of the chemical tanker FAIRCHEM FILLY (the "Vessel"). On May 30, 2019, the Vessel berthed at Vopak's Ship Dock No. 5 to discharge a cargo of Hexene. Hexene is extraordinarily intolerant of oxygen, and it cannot be exposed to the atmosphere. Therefore, as the Hexene was pumped out of the Vessel's cargo tanks, the Vessel crew's plan was to direct pressurized nitrogen into the Vessel's cargo tanks, to fill the void space created as the cargo offloaded out of the tank. The nitrogen was supplied by Vopak though a hose connected to the Vessel's manifold. A delicate balance had to be maintained by the Vessel's crew, acting as a team, to feed just enough nitrogen into the Vessel's cargo tanks to match the amount of Hexene being pumped out. It is important to point out that the Vessel's crew was in sole control of the Vessel's cargo pumps used to discharge the cargo (and the void space being created by the cargo discharge); therefore, the Vessel's crewmembers were the only persons that knew how much nitrogen should be fed into the Vessel's cargo tanks.

There are several valves that must be opened and closed between the Vessel's manifold and the Vessel's cargo tanks to control the amount of nitrogen going into the Vessel's cargo tanks. It is uncontroverted that these valves were controlled solely by the Vessel's crewmembers.

Prior to the start of cargo offloading, the Vessel's Chief Officer and a Vopak supervisor met on the Vessel to discuss the cargo discharge process including the use of nitrogen, among numerous other safety and operational issues (the "Key Meeting").

Thereafter, during the discharge of the Hexene, the crew failed to maintain this critical balance and allowed an excess volume of nitrogen into the Vessel's tanks, resulting in one of the Vessel's cargo tanks over-pressurizing and rupturing.

Plaintiff's sole claim against Vopak is that Vopak failed to warn the Vessel crew of the nitrogen pressure. *See, Plaintiffs' Original Complaint* at paras. 8 and 11. (Doc No. 1).[1]

However, at the Key Meeting Vopak's Dock Supervisor, Rigoberto Ramirez, told the Chief Officer that the Terminal was going to connect a 4-inch nitrogen supply hose to the Vessel's manifold, that Vopak would supply nitrogen at a pressure of 100 to 110 pounds per square inch (psi), and that the Vessel would be in control of the nitrogen while the Vessel was discharging. (*See* Exhibit A, Deposition of Rigoberto Ramirez at p. 47:18-25; Exhibit B, Affidavit of Rigoberto Ramirez, ¶ 1). This was told to the Vessel several times. (Exhibit A at p. 48:1-13). Further, the Vessel was equipped with a pressure gauge where the nitrogen supply hose was connected to the Vessel. (Exhibit C, Deposition of Vessel's Captain Yolun at p. 64:11-25). Therefore, Plaintiffs argument that the nitrogen pressure was "not reasonably known" to the

---

[1] While there might be a dispute between the parties as to whether a 2-inch or 4-inch hose should have been provided to the Vessel by Vopak, it is undisputed that the Vessel received the 4-inch hose and that was the hose that was connected to the Vessel's manifold. The size differences between a 2-inch and 4-inch hose is easily discernible to the naked eye. Therefore, the hose size cannot be claimed to be a hidden hazard.

Vessel crew is a fallacy. As such summary judgment should be granted and Plaintiffs' claim should be dismissed with prejudice.

## IV.
## Issue Presented

Whether Vopak met its wharfinger's duty to Plaintiffs to warn of hidden hazards. The only reliable and admissible evidence proves that Vopak met its duty.

## V.
## Summary Judgment Standard

Under rule 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323; *See also*, Fed. R. Civ. P. 56(c). The burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 575, 585-87 (1986). However, to meet its burden, the nonmovant "must do more than simply show there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* At 586-7. Furthermore, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d

539, 541 (5th Cir. 2003). "Finally, and especially relevant to this case, on a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012)(citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987)).

## VI.
## Law and Analysis

Vopak's sole duty owed to Plaintiffs was that of a wharfinger to a vessel owner. "It is well settled that a wharfinger is not the guarantor of the safety of a ship coming to his wharf." *Trade Banner Line, Inc. v. Caribbean Steamship Co., S.A.,* 521 F.2d 229, 230 (5th Cir. 1975). The wharfinger, however, is "under a duty to exercise reasonable diligence to furnish a safe berth and to avoid damage to the vessel." *Id.* This includes the duty to "warn the ship of any hidden hazard or deficiency known to the wharfinger or which, in the exercise of reasonable care and inspection, should be known to him and not reasonably known to the shipowner." *Id.*

In *Trade Banner*, the ship's mooring lines parted during a storm and the ship ran aground. The court found that the wharf's mooring line fittings were "apparent." *Id.* at 231. In other words, any deficiency in the fittings was known to the vessel's master, and the wharfinger's duty to warn was not triggered. The court went on to say the master was "present and supervising" and was "responsible for the mooring of the ship." *Id.* Here, the court acknowledged that the ship's master and crew are in the best position to manage ship operations, not the wharfinger. *See, General Construction Co. v. Isthmian Lines, Inc*. 259 F. Supp. 336, 337 (D. Oregon, 1966). (Those in charge failed to control the ship, use available tugs, and consider tide and current conditions).

By comparison, the wharfinger was found to have breached its duty to warn in *Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc*. 354 F.2d 476, 480 (4th Cir.

5

1966). In *Medomsley,* a cleat was found to be inadequately secured to the wharf, a condition about which the wharfinger failed to warn the ship. The cleat was secured to the wharf with two rather than six bolts, a condition not reasonably known to the shipowner.

The wharfinger's duty mirrors that of a premises owner to a business invitee. To warn of hidden dangers known to the premises owner and not reasonably known to the invitee. In the instant case, the hidden danger alleged by Plaintiffs was the nitrogen pressure that was going to be supplied to the Vessel during cargo discharge.

As detailed above, at the Key Meeting, Vopak's Dock Supervisor, Mr. Ramirez, told the Chief Officer that the Terminal was going to connect a 4-inch nitrogen supply hose to the Vessel's manifold, that Vopak would supply nitrogen at a pressure of 100 to 110 pounds per square inch (psi), and that the Vessel would be in control of the nitrogen while the Vessel was discharging. (*See* Exhibit A, Deposition of Rigoberto Ramirez at p. 47:18-25; Exhibit B, Affidavit of Rigoberto Ramirez, ¶ 1). This was told to the Vessel several times. (Exhibit A, at p. 48:1-13). Further, the Vessel was equipped with a pressure gauge where the nitrogen supply hose was connected to the Vessel. (Exhibit C, Deposition of Vessel's Captain Yolun at p. 64:11-25). Therefore, the Vessel's crew could see the nitrogen pressure prior to opening the Vessel's valves to flow nitrogen into the cargo tank. (*See* Exhibit D, Deposition of Natu, pp. 43:18-44:10). As the Master of the Vessel and Mr. Natu testified, "if there was any question in the mind of the Chief Mate about the flow rate, he should not have commenced operations." (Exhibit D, Deposition of Natu, at p. 30:8-13; *see also* Exhibit C, Deposition of Capt. Yolun, at p. 43:18-21).

The Master, Chief Officer and Vessel's crew were responsible for every activity on board their Vessel. Not Vopak. The undisputed testimony is that the Vessel's crew were in control the flow of cargo being discharged and the valves controlling the flow of nitrogen from the manifold

6

to the Vessel tanks and, therefore, the pressure in the tank. (*See* Exhibit C, Deposition of Capt. Yolun, at pp. 53:6-54:7.) The crew failed to control the nitrogen once they opened the Vessel's valves and allowed the nitrogen to enter into the Vessel's system. The crew was warned and they bear sole fault for their carelessness. Claiming ignorance after the fact is not a defense for the Vessel's failure to properly control the flow of nitrogen.

There is no credible summary judgment evidence to controvert that Vopak warned the Vessel of the nitrogen pressure and that the Vessel was in full control of the flow into the Vessel's tanks. While Vopak can support this Motion for Summary Judgment with admissible evidence, via Mr. Ramirez's testimony, Plaintiffs cannot. Plaintiffs rely on inadmissible hearsay statements of the Chief Officer during the Key Meeting that Ramirez failed to state the nitrogen pressure. Plaintiffs cannot produce any credible, admissible evidence to controvert Mr. Ramirez's testimony. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions. *See* Fed.R.Civ.P. 56(e)"). Both Mr. Natu and Capt. Yolun testified that they were not at the Key Meeting and have no personal knowledge as to what was discussed between Mr. Ramirez and the Chief Officer. (Exhibit D, Deposition of Natu, at pp. 82:24-83:2; Exhibit C, Deposition of Capt. Yolun, at p. 29:1-5). As such, Plaintiffs cannot defeat this Motion for Summary Judgment or meet their burden of proof at trial.

## VII.
## Conclusion

Based on the above, and the supporting evidence provided, the Court should summarily dismiss all claims brought by Plaintiffs against Vopak and grant all such further relief to which Vopak may be entitled, including but not limited to its claim for dead berth charge of $468,833.33.

        Respectfully submitted,

        **HOLMAN FENWICK WILLAN USA LLP**

        */s/ Thomas R. Nork*
        Thomas R. Nork
        Fed. Id No. 12690
        Texas Bar No. 15078500
        tom.nork@hfw.com
        5151 San Felipe, Suite 400
        Houston, TX 77056
        Telephone: (713) 917-0888
        Facsimile: (713) 953-9470

        **ATTORNEY IN CHARGE FOR DEFENDANT, VOPAK TERMINAL – DEER PARK, INC.**

**OF COUNSEL:**
**Holman Fenwick Willan USA LLP**
Alejandro Mendez-Roman
Fed Id No. 2295449
Texas Bar No. 24102778
alex.mendez@hfw.com
5151 San Felipe, Suite 400
Houston, TX 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on August 15, 2023, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system with notice being sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

                                        */s/ Thomas R. Nork*
                                        Thomas R. Nork